The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Dillard. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for various modifications or additions throughout the Opinion.
* * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the injury by accident giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the defendant-employer regularly employed three or more employees, one of whom was the plaintiff.
2. The defendant, SCT Yarns, Inc., is a duly qualified self-insurer with Hewitt, Coleman Associates, Inc., as its servicing agent.
3. That the Opinion and Award filed by former Deputy Commissioner Richard L. Dillard, Jr. on 3 January 1992 is incorporated into the record of this hearing.
4. The depositions of Dr. C. Michael Nicks and Shirley Tuft and the medical records of Dr. Donald F. D'Alessandro are allowed into evidence.
* * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On 6 August 1990, plaintiff worked as a spinner for SCT Yarns, Inc. ("SCT). On this date, she developed a compensable occupational disease known as impingement syndrome of the right shoulder. Subsequently, plaintiff became unable to perform her regular-duty job as a spinner and was placed in a light-duty position as a roller picker.
2. On 1 October 1990, plaintiff's right shoulder was operated on by Dr. C. Michael Nicks, an orthopaedist.
3. Plaintiff returned to work at SCT on 25 October, 1990 in her previous capacity as a roller picker. Plaintiff was able to perform this job without difficulty and in November or early December, 1990, plaintiff was placed back in her original job as a spinner. Plaintiff worked as a spinner until 28 February 1991 when she had a hysterectomy. Plaintiff remained out of work due to the hysterectomy until 14 April 1991 and returned to her regular-duty job as a spinner on 15 April 1991.
4. On 10 July 1991, plaintiff alleged that a "knot" appeared on her right shoulder while she was at work. Plaintiff visited her treating orthopaedist, Dr. Michael Nicks, later that day and Dr. Nicks prescribed light-duty work with certain restrictions. Specifically, Dr. Nicks restricted plaintiff from performing heavy lifting and overhead work which involved right-side humeral flexion of greater than sixty degrees at the shoulder.
5. Light-duty work within the doctor's restrictions was not available at SCT at that time and plaintiff requested medical leave. Plaintiff's request was granted and plaintiff was placed on medical leave beginning 11 July, 1991. Plaintiff received company-funded short term disability benefits during the next thirteen weeks.
6. On 13 January 1992, SCT offered plaintiff a modified
(emphasis added) roller picker job which was within the restrictions prescribed by Dr. Nicks. Namely, this modified position allowed plaintiff to work using only her left hand and did not require her to lift her right arm higher than sixty degrees. After SCT Yarns offered plaintiff the position, plaintiff accepted it stating that she "saw no problem" with her ability to perform this job since she was left-handed and had previously performed this job when it was a position with more overhead work while her right arm was placed in a sling. Also present at this meeting were plaintiff's department manager, Tony Black, and first-shift supervisor, Ken Lingerfelt.
7. Plaintiff visited Dr. Nicks later that afternoon on 13 January 1992 for a routine follow-up visit. Plaintiff inaccurately indicated in a subsequent telephone conversation with Margaret Sigmon, SCT's personnel manager, that Dr. Nicks would not approve the modified roller picker position. Ms. Sigmon thereafter spoke with Dr. Nicks by telephone later the same day and Dr. Nicks stated, contradicting plaintiff's representation, that plaintiff should return to work. Specifically, Dr. Nicks told Ms. Sigmon that the restrictions which he placed on plaintiff had not changed, that plaintiff had been very difficult to deal with and that if themodified roller picker job was within the limitations he prescribed, he felt that she should take it. Dr. Nicks was of the opinion that plaintiff was capable of performing light work within the restrictions he placed on her. In fact, Dr. Nicks specifically testified in his deposition that "I would think she would be able to perform anything outside the restriction that we placed on her." (Nicks Dep. p. 24).
8. After Ms. Sigmon spoke with Dr. Nicks she sent a letter via registered, return-receipt mail dated 14 January 1992. The letter stated that Ms. Sigmon had spoken with Dr. Nicks, that themodified roller picker position was within the limitations prescribed by Dr. Nicks and that the company expected plaintiff to return to work on 17 January 1992.
9. On 16 January 1992, Ms. Sigmon received a telephone call from plaintiff, wherein plaintiff requested that Ms. Sigmon "guarantee" that she would not feel any pain while performing themodified roller picker job. Ms. Sigmon informed plaintiff that no one could make such a guarantee and that since themodified roller picker position was within the restrictions set forth by Dr. Nicks, the company expected her to return to work the next morning.
10. Plaintiff failed to return to work for SCT on 17 January 1992 and after two full days of plaintiff's failure to appear, the company considered that she had voluntarily resigned pursuant to established company policy.
11. On 24 January 1992, plaintiff telephoned Ms. Sigmon and Ms. Sigmon stated that plaintiff was considered to have voluntarily resigned for failure to return to work. Subsequent to this conversation, plaintiff had not spoken with Ms. Sigmon to inquire about returning to work in the modified roller picker position.
12. Plaintiff presented the testimony of Shirley Tuft, a co-worker at SCT, that if believed, would establish that themodified roller picker position involved substantial overheard work which was not within the restrictions set forth by Dr. Nicks. The undersigned are unable to accept Ms. Tuft's testimony as credible, however, since the evidence adduced from Ms. Tuft's deposition revealed that the roller picker job to which Ms. Tuft referred was not a "modified" job. At the initial hearing, SCT's personnel manager, Margaret Sigmon, plaintiff's department manager, Tony Black and plaintiff's supervisor, Ken Lingerfelt, revealed that a modified roller picker position was offered to plaintiff and this job as within the restrictions set forth by her physician. Namely, the position would allow plaintiff to work solely with her left arm and would not require any overhead movements or humeral flexion of greater than sixty degrees at the right shoulder. Plaintiff's argument first made at Full Commission that since plaintiff alleged that the job was to be temporary, plaintiff had a right to refuse the job is not accepted as persuasive. Suitable work within plaintiff's restrictions was offered which even plaintiff initially verified she could perform. However, she nevertheless refused to even attempt the work and never contacted the employer again.
13. Plaintiff offered as an exhibit the job description for anon-modified roller picker position which, if accepted by the Industrial Commission as a correct description of the job which plaintiff was offered on 13 January 1992, would establish that plaintiff was incapable of performing the duties of this position. The undersigned, however, are unable to accept thenon-modified roller picker job description as an accurate description of the job which plaintiff was offered on 13 January 1992, since the job which plaintiff was offered, in fact, was a modified position.
14. Plaintiff's testimony, if believed, would establish that the modified roller picker position offered to plaintiff is not a "real" position found in the marketplace, but is instead a "made up" job. The undersigned are unable to accept plaintiff's testimony as credible, however, since the evidence adduced at the hearing before the former Deputy Commissioner revealed that the modified roller picker position is both an important and necessary position in SCT's spinning room. In this regard, SCT's personnel manager, Margaret Sigmon, testified that the full-time position of a modified roller picker became available in January, 1992 when SCT decided to remove the roller picking function from within the job description of the spinning doffers and establish that function as a full-time job. Furthermore, Ms. Shirley Tuft testified in deposition that she had worked, inter alia, as a roller picker as early as the spring of 1991, which was before the position had been modified.
15. Plaintiff has suffered a twenty-five percent permanent partial disability to her shoulder with fifteen percent of this permanent partial disability being related to her compensable occupational disease on 6 August 1990, as determined by the Opinion and Award filed by former Deputy Commissioner Dillard on 3 January 1992. The other ten percent of plaintiff's permanent partial disability is unrelated to this claim.
* * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The Industrial Commission has jurisdiction over the subject matter of this case and the parties are properly before the Industrial Commission. At all relevant times, the employee-employer relationship existed between the plaintiff and defendant. N.C. Gen. Stat. § 97-2.
2. Plaintiff suffered a compensable occupational disease known as impingement syndrome of the right shoulder. An Opinion and Award issued on 3 January 1992 by former Deputy Commissioner Dillard relating to that 6 August 1990 occupational disease set forth the benefits to which plaintiff was entitled. N.C. Gen. Stat. § 97-53 (13).
3. Plaintiff did not suffer a new injury, or an injury by accident, specific traumatic incident or new occupational disease out of and in the course of her employment with defendant-employer on 10 July 1991. N.C. Gen. Stat. § 97-2 (6) and N.C. Gen. Stat. § 97-53 (13).
4. The job of modified roller picker which plaintiff was offered on 13 January 1992, was within the restrictions set forth by plaintiff's treating orthopaedist, Dr. Michael Nicks. Specifically, the modified position would allow plaintiff to work solely with her left arm and would not require any overheard movements or humeral flexion of greater than sixty degrees at the right shoulder. Since plaintiff had previously performed this job when it required more strenuous activities and since plaintiff admitted she could perform this modified job, plaintiff herself has established evidence of her wage earning capacity.
5. Since plaintiff unreasonably refused to perform the modified
roller picker job offered on 13 January 1992, plaintiff is not entitled to additional compensation and medical care during the continuance of such refusal to accept suitable employment. N.C. Gen. Stat. § 97-32.
6. The full-time job of modified roller picker which SCT offered to plaintiff is an important and necessary position in SCT's spinning room. Such job is a real position which exists in the marketplace and is not "made work." Plaintiff did not present evidence to rebut the presumption that this job was generally available in the competitive labor market. Saumsv. Raleigh Community Hospital, 124 N.C. App. 219, 476 S.E.2d 372
(1996).
7. Plaintiff's fifteen percent permanent partial disability relating the occupational disease of 6 August 1990 entitles her to receive thirty-six weeks of compensation at the rate of two hundred eighty one and 31/100 dollars ($281.31) per week. N.C. Gen. Stat. § 97-31 (13).
8. Defendant is not responsible for any further compensation or medical benefits on behalf of plaintiff during the continuance of her unjustified refusal.
* * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the former Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for additional temporary total disability benefits is DENIED during the continuance of her unjustified refusal of suitable work.
2. Plaintiff's claim for additional medical treatment following her allegations is DENIED during the continuance of her unjustified refusal of suitable work. N.C. Gen. Stat. § 97-25.
3. Plaintiff's fifteen percent permanent partial disability related to her compensable occupational disease on 6 August 1990, entitles plaintiff to an award of thirty-six weeks of compensation payable at the compensation rate of two hundred eighty-one and 31/100 dollars ($281.31) per week. N.C. Gen. Stat. § 97-31 (13).
4. An attorney's fee in the amount of twenty-five percent of said award is awarded to plaintiff's counsel to be divided by plaintiff's former counsel, Robert Powell, who represented plaintiff in establishing liability and permanent partial disability and plaintiff's current attorney, Mr. Robert C. Lewis.
5. Defendant shall bear the costs.
This the ____ day of June 1997.
 S/ _____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _____________ THOMAS J. BOLCH COMMISSIONER
S/ _____________ COY M. VANCE COMMISSIONER
DCS:jmf